UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAMELAH OAKEY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:12CV2207 JAR |
| ) | |
| U.S. ARMY CORPS OF ENGINEERS, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**I.     Findings of Fact**

Plaintiffs Pamelah and William Oakey are residents of a residential neighborhood in the City of Des Peres in St. Louis County, Missouri. The Oakeys' property abuts a creek that is a tributary of Two-Mile Creek, which flows into the River Des Peres and, ultimately, the Mississippi River.

On September 17, 2010, the U.S. Army Corps of Engineers ("the Corps") Regulatory Branch received a permit application package ("Permit Application"), pursuant to its powers under §404 of the Clean Water Act ("CWA"), from Metropolitan St. Louis Sewer District ("MSD") regarding a project titled "Deer Creek Watershed Storm Channel Improvements-Fawn Valley Storm Channel Improvements" (hereinafter, "the Project"). (ECF No. 17-3). The Permit Application contained a Corps permit application form, ENG FORM 4345, as well as design drawings of the proposed project, proposed alternatives (ECF No. 17-4), an avoidance and minimization proposal (ECF No. 17-5), a photo log showing examples of a concrete plantable segmented retaining wall ("PSRW") (ECF No. 17-6), and a location map (ECF No. 17-7). The Project's stated purpose was to "stabilize eroding banks in a residential neighborhood. The stream banks are eroding and contributing significant sediment load to JWUS [Jursidictional Waters of the United States]. The failing stream

banks also contribute to public safety concerns and threaten to impact an existing sanitary sewer line."

On October 14, 2010, the Corps issued a Public Notice, notifying all interested parties that the Corps had received an application for a Section 404 Permit from MSD. The Public Notice period ran from October 14, 2010 through November 3, 2010.

There were five (5) separate public meetings regarding this Project, which were held on February 16, 2010; May 17, 2012; July 18, 2012; September 6, 2012; and October 10, 2012. Jennifer Brown, Regulatory Project Manager at the St. Louis District of the U.S. Army Corps of Engineers, testified that she attended a public meeting on May 17, 2012 to address concerns identified during the public notice period. Jeff Smith, MSD Project Engineer, attended all five of the public meetings to address concerns.

On November 1, 2010, Stantec, a consultant for MSD, prepared a formal Analysis of Alternatives and submitted it to MSD. (ECF No. 17-8). The Analysis of Alternatives outlined six alternatives: (1) do nothing, (2) buyout the impacted properties, (3) hardening structures, (4) vegetation alone, (5) creating a floodplain, and (6) planting modular block walls. Alternative six (6) was selected as the preferred alternative.

On July 31, 2012, the Corps issued an Environmental Assessment ("EA") and Statement of Finding ("Findings") for the MSD Permit Application. (ECF No. 17-12). The EA discussed all six alternatives and determined that planting a modular block wall was the best option. The EA also included a Finding Of No Significant Impact ("FONSI"). Notably, the EA included comments submitted by Plaintiffs and Patricia Zorn, as well as responses from the Corps.[1] The Corps determined that the proposed project complied with the 404(b)(1) guidelines and that the issuance

---

[1] William Oakley and Patricia Zorn both testified at the hearing on December 20, 2012.

of a Department of the Army Permit under Section 404 of the Clean Water Act was not contrary to the public interest. (ECF No. 17-12, p. 24).

The Corps issued Permit P-2773 to MSD on August 21, 2012 to Jeffrey Smith of MSD. (ECF No. 17-13). MSD commenced construction of the first wall in October 2012. Plaintiffs filed this action on November 28, 2012 (ECF No. 1), and filed a Motion for Temporary Restraining Order on December 7, 2012 (ECF No. 4). Plaintiffs filed a Motion for a Temporary Restraining Order, Preliminary Injunction and Expedited Hearing (ECF No. 24) on December 19, 2012. The parties agreed to consolidate the hearing on the Motion for Temporary Restraining Order and the Motion for Preliminary Injunction (ECF No. 12), and the Court held a hearing on the consolidated motions on December 20, 2012.

## II. Standard of Review

Whether a preliminary injunction should issue involves consideration of the following factors (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. Dataphase Sys. v. C L Sys., 640 F.2d 109, 114 (8th Cir. 1981). "In deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." S. J. W. v. Lee's Summit R-7 Sch. Dist., 696 F.3d 771, 776 (8th Cir. 2012) (citations and quotations omitted). Ultimately, however, the Court "must consider the relative strength of the four factors, 'balancing them all.'" Brady v. NFL, 640 F.3d 785, 789 (8th Cir. 2011)(quoting Fargo Women's Health Org. v. Schafer, 18 F.3d 526, 538 (8th Cir. 1994)).

## III. Discussion

### A. Likelihood of Success on the Merits

In order to prevail on their claims under the National Environmental Protection Act ("NEPA"), the Administrative Procedures Act, and the Clean Water Act, Plaintiffs are required to prove that there has been a "substantial change" in the Project sufficient to trigger a duty on the Corps' part to issue a supplemental environmental assessment. Ark. Wildlife Fed'n v. United States Army Corps of Eng'rs, 431 F.3d 1096, 1102 (8th Cir. 2005). When a federal agency proposes to undertake "major Federal action[s] significantly affecting the quality of the human environment," NEPA requires it to prepare an environmental impact statement (EIS)." 42 U.S.C. §4332(2)(C). "The NEPA makes no mention of Environmental Assessments ('EAs'), which are the documents agencies prepare in preparation for less significant agency actions." Friends of the Bow v. Thompson, 124 F.3d 1210, 1214 (10th Cir. 1997). "However, the Council on Environmental Quality (CEQ) has issued regulations that govern agency decisions regarding whether to prepare an EIS, and those regulations also outline the requirements for preparing an EA." Id. (citing 40 C.F.R. § 1500 et seq.). "The CEQ regulations provide that an agency may prepare an EA to determine whether an EIS is necessary." Id. (citing 40 C.F.R. § 1501.4, 1508.9(a) (1996)). "If the EA indicates that the proposed action will not significantly impact the environment, the agency may make a finding of no significant impact, or 'FONSI.'" Id. (citing 40 C.F.R. § 1501.4(e)). "Where a FONSI is made, the agency need not prepare a full EIS." Id. (citing 40 C.F.R. § 1501.4(e)).

The standard for issuing a supplemental EA or EIS is the same. Idaho Sporting Congress v. Thomas, 137 F.3d 1146, 1152 (9th Cir. 1998), rev'd on other grounds, Lands Council v. McNair, 537 F.3d 981 (9th Cir. 2008); Price Rd. Neighborhood Ass'n v. United States Dept. of Transp., 113 F.3d 1505, 1509 (9th Cir. 1997). Supplementation is warranted "if the agency 'makes substantial changes in the proposed action that are relevant to environmental concerns' or 'there are significant new circumstances or information relevant to environmental concerns.'" Ark. Wildlife Fed'n, 431

F.3d at 1102 (quoting 40 CFR § 1502.9(c)). 40 CFR § 1502.9(c) "is interpreted to require a [supplemental EIS] 'if the changed plans or circumstances will affect the quality of the human environment in a significant manner…not already considered by the federal agency.'" Ark. Wildlife Fed'n, 431 F.3d at 1102 (quoting Airport Impact Relief, Inc. v. Wykle, 192 F.3d 197, 204 (1st Cir. 1999); Marsh, 490 U.S. at 374). Or, a change is substantial if it presents a 'seriously different picture of the environmental impact.'" Ark. Wildlife Fed'n, 431 F.3d at 1102 (quoting South Trenton Residents Against 29 v. Fed. Highway Admin., 176 F.3d 658, 663 (3d Cir. 1999); see also Hickory Neighborhood Defense League v. Skinner, 893 F.2d 58, 63 (4th Cir. 1990); Sierra Club v. Froehlke, 816 F.2d 205, 210 (5th Cir. 1987)). To determine whether a change is substantial the Court looks at the possible environmental consequences not previously considered. Ark. Wildlife Fed'n, 431 F.3d at 1102; Marsh, 490 U.S. at 374.

Plaintiffs argue that they likely will succeed on the merits because there has been a substantial change from plantable walls to "barren, rock-filled walls" since the EA and the Permit Application. Plaintiffs contend that MSD changed their plan from retaining walls that included plantings within the blocks to a modular block wall that was filled with rock. Plaintiffs contend that the Corps knew about this change, this change was substantial, and the EA must be supplemented. Defendants assert that the inclusion of vegetative plantings within the PSRWs was considered early in the process but before the application and issuance of Permit P-2773. Defendants maintain that, due to the velocities of water that occur in Two Mile Creek during storm events, it was determined that any vegetative materials planted in the PSRW would likely not survive storm events. In addition, Defendants contend that the wall required backfill to assure its structural stability and to promote drainage. Accordingly, Defendants assert that, prior to submitting the Permit Application, MSD decided that the PSRWs would be filled with clean rock. Defendants contend that the term

- 5 -

"plantable," in reference to "plantable" segmented retaining walls, is a term of art, and not a commitment to plant vegetation in each individual block.

Here, the Court reviews the Corps' decision not to mandate a supplemental EA after the purported change from using individual, planted blocks to the PSRW with vegetation planted at the foot of the wall and either behind the wall or at the top of the embankment. The Court "will set aside an agency's decision if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Dawson Farms v. Risk Mgmt. Agency, 698 F.3d 1079, 1082 (8th Cir. 2012)(citing 5 U.S.C. § 706(2)(A)). In other words, "[a] decision is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Friends of the Norbeck v. United States Forest Serv., 661 F.3d 969, 975-976 (8th Cir. 2011)(citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983). The Court affords "substantial deference to an agency's interpretation of its own regulations[.]" Kindred Hosps. E., LLC v. Sebelius, 694 F.3d 924, 928 (8th Cir. 2012).

The Court finds that the there has been no change from the application and permitting that would require a supplemental EA. The Permit Application indicates that MSD was proposing to plant vegetation only at the toe and the top of the retaining wall. The drawing submitted in conjunction with the Permit Application shows "Modular Block Wall Planting Zones" 1,2,4,and 5. (Ex. C, ECF No. 17-3, p. 23). The plans also state in the "Modular Block Installation and Stepping Base Detail" that it was intended to "fill units and spaces between units with rock." (Id., p. 21).

MSD and the Corps admit that planting within the individual blocks was considered during the very early stages of the process and may have been communicated to some residents. See ECF No. 13, ¶3d. Those plans, however, appear to have been abandoned as of at least July 2010, and were never included in the Permit Application or in the permit ultimately issued to MSD. While any (mis)statements made to the residents at those early stages is unfortunate, the Court does not believe that it is a basis for finding a change of circumstances. The relevant inquiry is whether a substantial change occurred that mandates a supplemental EA. Here, the record reflects that no change has occurred regarding filling the PSRW from the Permit Application or the EA to the present.

The Court also notes that there may be some confusion among the parties because the PSRW contains "plantable" blocks. The Court finds that the term "plantable" is a term of art referring to hollowed-out blocks, and does not indicate that the blocks were intended to be planted on an individual basis. As noted, the plans consistently refer to rocks, not plants, as filling the PSRW.

Accordingly, "[w]ith no likelihood of success on the merits, there is little justification for granting a preliminary injunction[.]" CDI Energy Servs. v. West River Pumps, Inc., 567 F.3d 398, 402 (8th Cir. 2009). The Court finds that the likelihood of prevailing on the merits weighs strongly in favor of Defendants. The Court does not believe that a change occurred regarding the planting of the PSRW and there is no basis for a supplemental EA. Based upon the forgoing, the Corps' decisions to issue Permit P-2773 and not to conduct a supplemental EA were not arbitrary or capricious.

### B. Other Dataphase Factors

Having concluded that Plaintiffs' likelihood of success on the merits does not support a preliminary injunction, the Court addresses the parties' arguments as to the remaining Dataphase

factors jointly. S. J. W., 696 F.3d at 779. The Court concludes that these factors also do not weigh in favor of granting injunctive relief.

Plaintiffs argue that they will suffer substantial irreparable injury because the Project will destroy the habitat and the aesthetic character of Two Mile Creek. (ECF No. 24, ¶8). Plaintiffs claim that the balance of the harms weighs in their favor because MSD would not be facing any harm if it had not changed plans from the work it originally proposed in its Permit Application. (ECF No. 24, ¶9). Finally, Plaintiffs maintain that injunctive relief is in the public interest because allowing MSD to proceed with its project before its impacts have been reviewed would defeat the purposes behind the laws sought to be enforced by Plaintiffs' action. (ECF No. 24, ¶9).

The Corps contends that Plaintiffs' purported irreparable harm is entirely conjectural. Further, the Corps maintains that Plaintiffs have not demonstrated that the harms they allege outweigh the harms that will result from not stabilizing the banks of the Two Mile Creek. Finally, the Corps claims that the public interest favors denying Plaintiffs' Motions to avoid further deterioration of Two Mile Creek.

The Court finds that any harm to Plaintiffs does not outweigh the balancing of the other Dataphase factors. The Court accepts Plaintiffs' concern that the Project may have some immediate detrimental effect on the aesthetic value of their land. The Court also notes that the parties presented conflicting evidence regarding the environmental impact of the Project. The Court, however, recognizes that the Corps considered several alternatives before deciding to use PSRWs, and the Court defers to the agency's expertise regarding that determination. Given the limited scope of this Court's review, the Court believes that the public interest weighs in favor of denying injunctive relief and allowing the Project to continue. Thus, the Court finds that the balance of equities favors denying Plaintiffs' Motions.

**IV.     Conclusion**

The Court finds that the <u>Dataphase</u> factors weigh in favor of denying injunctive relief. Plaintiffs have not demonstrated that they will be successful on the merits because they have not shown that there was a substantial change to the Project's plans. The Court also defers to the Corps' discretion regarding issuing Permit P-2773.


Dated this <u>21st</u> day of December, 2012.

                                                                                                         UNITED STATES DISTRICT JUDGE